# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiffs,<br><br>v.<br><br>SHERMAN JOHNSON, JR. and SARKIS LABACHYAN,<br><br>Defendants. | 8:16CR241<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on defendant Sherman Johnson, Jr.'s ("Johnson") Motion for a New Trial (Filing No. 146). *See* Fed. R. Crim. P. 33(a). For the reasons stated below, the motion is denied.

## I. BACKGROUND

Johnson, an African-American male, and his co-defendant Sarkis Labachyan's ("Labachyan") jury trial began on May 8, 2018. Johnson and Labachyan were charged with (1) possession of five kilograms or more of a mixture or substance containing cocaine and (2) conspiracy to possess with intent to distribute five kilograms or more of a mixture or substance containing cocaine. *See* 21 U.S.C. § 841(a)(1) and (b)(1) and 846.

During voir dire, the government used three of its six peremptory strikes on the only jurors in the jury pool who were racial minorities.[1] Pursuant to *Batson v. Kentucky*, 476 U.S. 79 (1986), Johnson challenged the government's peremptory strikes as violations of the Equal Protection Clause of the Fourteenth Amendment. After hearing the government's stated reasons for the strikes, the Court overruled the *Batson* challenges.

---

[1]This assertion of Johnson's is not contested by the government and the Court takes it as true for the purposes of this motion.

The jury found Johnson and Labachyan guilty of both charges. Johnson filed the present motion on May 28, 2018, renewing his challenges to the government's strike of two jurors: Juror W, an African-American female, and Juror S, who Johnson believes was a Latino male.[2]

## II. DISCUSSION

"The Equal Protection Clause proscribes striking veniremembers on the basis of race." *Bell-Bey v. Roper*, 499 F.3d 752, 757 (8th Cir. 2007); *accord Batson*, 476 U.S. at 86 ("Purposeful racial discrimination in selection of the venire violates a defendant's right to equal protection because it denies him the protection that a trial by jury is intended to secure.").

"Under *Batson*, a district court applies a three-step process when a defendant alleges that a prosecutor's juror strikes are racially motivated." *United States v. Hart*, 544 F.3d 911, 914 (8th Cir. 2008).

> The trial court first determines whether the defendant has made a prima facie showing that a prosecutor's peremptory strike was based on race. If the defendant satisfies the first step, the burden then shifts to the prosecutor to present a race-neutral explanation for striking the juror. The prosecutor's stated reason need not be persuasive, or even plausible[,] as long as it is not inherently discriminatory. The burden then shifts back to the defendant at the third step to shoulder his ultimate burden of establishing purposeful discrimination. The final step involves evaluating the persuasiveness of the justification proffered by the prosecutor.

*United States v. Robinson*, 781 F.3d 453, 461 (8th Cir. 2015) (quoting *Smulls v. Roper*, 535 F.3d 853, 859 (8th Cir. 2008) (en banc)).

---

[2]When responding to the *Batson* challenge, the Assistant United States Attorney ("AUSA") stated, "I'm not even sure looking at him whether or not he's a minority," and the Court noted, "I'm not sure, other than looking at the surname, that I know . . . if he's in some protected category. I can't say that by looking at him." However, the Court assumed at trial that Juror S was a member of a racial minority and does the same here.

The government concedes Johnson has made a prima facie showing that the peremptory strikes were based on race, and the Court will move to the second and third steps for the two challenged jurors.[3]

**A. Juror W**

During voir dire, the AUSA stated, "I had flagged [Juror W] before I even knew who she was." After incorrectly asserting Juror W had a lack of education when she had a college degree, the AUSA noted his biggest concerns were (1) Juror W had only been living in her home for a month, (2) she rented her home, (3) she just had a child, and (4) she was a single mother, all of which would result in a "big burden there." The AUSA added that Juror W's questionnaire stated her father had been murdered, but she remained silent during voir dire, even when the Court asked, "Have any of you ever been involved in any court in a criminal matter that concerned you, any member of your family or close friend, either as a defendant, a witness, or a victim?" The AUSA finished by categorizing Juror W's questionnaire description of her father's murder as "bare bones."

These stated reasons are not inherently discriminatory, so the burden shifts back to Johnson "to shoulder his ultimate burden of establishing purposeful discrimination." *Id*. Johnson argues the AUSA's initial statement, "I had flagged [Juror W] before I even knew who she was," shows that the AUSA must have based the decision based on Juror W's race. Johnson also claims the AUSA's incorrect designation of Juror W as someone with only a high school education shows the stated reasons for the strike were pretextual.[4] Johnson asserts all the AUSA's "biggest concerns" were true of other jurors as well. Finally, Johnson (1) contends the AUSA should have directly asked Juror W about the death of her father rather than speculating and (2) disputes the AUSA's representation of Juror W's questionnaire as "bare bones."

---

[3]Johnson does not challenge the government's strike of one of the three minority jurors.

[4]Johnson states the AUSA based the strike on Juror W's youth, but this reason was given in support of the strike of Juror S, not of Juror W.

The government professes the initial flagging of Juror W was done when reviewing the questionnaires before even seeing Juror W. This claim is supported by the fact that the AUSA mentioned questionnaire answers immediately after that statement. Although the AUSA incorrectly stated Juror W's education status, he gave that reason before retrieving the questionnaire answers and did not mention it again.

It is true that other jurors possessed some of the stated characteristics of Juror W, but Juror W was the only juror to possess all of them together, which raised the inference that Juror W could suffer financial hardship while sitting through the trial. After reviewing the transcript, the Court concludes the AUSA's portrayal of Juror W's testimony as "bare bones" applied to the description of her father's murder, not to the entirety of Juror W's questionnaire. Finally, an AUSA might not want to directly confront a juror about being a victim of a past crime because of the fear of alienating other jurors.

"Step three of the *Batson* inquiry involves an evaluation of the prosecutor's credibility, and 'the best evidence [of discriminatory intent] often will be the demeanor of the attorney who exercises the challenge[.]'" *Snyder v. Louisiana*, 552 U.S. 472, 477 (2008) (quoting *Hernandez v. New York*, 500 U.S. 352, 365 (1991) (plurality opinion). During the in-court denial of the *Batson* challenge, the Court found the AUSA to be credible and concluded the permissible reasons for the strike he gave to be persuasive based on their plausibility and the AUSA's demeanor. The Court finds so again.

### B. Juror S

In explaining his strike of Juror S, the AUSA noted Juror S "couldn't tell us what beyond a reasonable doubt meant." The AUSA added that Juror S appeared very young and, when "asked how long he's lived in his house, his response was 'I don't know, it's my mom's house.'" The AUSA concluded, "I just have some questions about his ability . . . to grasp the facts and to draw conclusions based on the law."

Johnson's only argument that the government impermissibly struck Juror S is that "[t]he [g]overnment['s] reasoning for striking [Juror S] is not grounded in and contrary to the law."

At the time of voir dire, the Court agreed with the AUSA that "[Juror S] only . . . tried to answer the one question and he struggled with that." Based on that difficulty and other observations, as well as the arguments made in court, the AUSA's strike of Juror S was permissible. Johnson has not shown purposeful discrimination.

**III. CONCLUSION**

Although Johnson made a prima facie showing that the government's peremptory strike was based on race, the government presented adequate race-neutral explanations for its strikes. Johnson did not carry his burden of establishing purposeful discrimination. Accordingly, Johnson's Motion for a New Trial (Filing No. 146) is denied.

IT IS SO ORDERED.

Dated this 26th day of June, 2018.

BY THE COURT:

Robert F. Rossiter, Jr.
United States District Judge